Case number 13-0979, Christina Monson v. Marie's Best Pizza, Inc. If the lawyers are going to argue, please approach the bench and introduce yourselves. Good morning. My name is James Formas on behalf of the plaintiffs. Good morning. My name is Jessica Fricke, and I represent the defendants, Marie's Best Pizza, Inc., and Peter and Athena Sikoris. And the plaintiff, how much time are you going to reserve? Five minutes. Okay. Let's proceed. Thank you. May it please the Court, my name is James Formas, and I am one of the attorneys for the certified classes in this lawsuit. The classes are comprised of hourly employees who worked at a Giordano's restaurant in Oak Park. It's a franchised restaurant. It's not part of the main corporate structure, so this case involves just a single restaurant. An employee filed a lawsuit in 2008 alleging that the way the defendant paid them minimum wage violated minimum wage law. Specifically, what the defendant did, what the employer did, is they paid a cash wage, but not 100% of the minimum wage. And they made up the difference by claiming a 25 cent meal credit. So in other words, they got all cash plus 25 cents in a meal credit to equal the applicable minimum wage. The plaintiff filed a lawsuit alleging that the defendant, the employer, was not actually, the meal program was not costing 25 cents per hour. So in other words, the employer was making a profit off of the meal credit. What do you allege that, how much did the meals cost? The record indicates what the defendant claimed the, what it cost was 262 per hour. 264. 264 per hour. That was in the average though, right? Correct. Based on the most expensive and the least expensive. Correct, and the assumption that somebody consumed a full meal rather than just had a bowl of soup, or had an order of french fries, or had a salad and not a full entree, or didn't consume. Well, the year of the tickets, there's one year that has 11 and a half months worth of meal tickets, correct? Correct. Do those indicate what was eaten?  Yes, for the most part. They had to, didn't they? That's how the chef would prepare the meal? Yes. All right, so when you say that, let's just talk about that one year. Okay. So for that one year, there was actual physical evidence in writing as to what meal was taken and how many meals were taken for the entire year. Correct. And it was somewhere in the neighborhood of about 6,000 meals, right? Yes, 5923 it was. All right, and you sort of suggested that, I don't know what percentage, but some of these meals were going to delivery drivers? Actually, Your Honor, I misspoke. There were actually 6,700 vouchers for that 11 and a half month period, and the number of chefs was 5,900. Okay, but wasn't there some testimony, like if you took the least expensive meal, didn't, I'm just talking about that one year, not all the years, okay, because they only had these for this one year, but for that one year, didn't the defendants show that if they took the least expensive cost of a meal times the number of meals that they provided and then compared that to the amount of money they had to expend to make these meals, that they did not show a profit? Yes, for that 11 and a half months, the records that they had... So do you lose for that year? Well... Does the record show for that year there's no question of a jerk back? I'm not talking about the other years, because I know there's not the same kind of evidentiary materials, but for that year... I'm not sure, I'm not ready to say we lose, because they included drivers and they included managers. Right, I agree, but were there so many? Didn't they even take out so many? I mean, aren't the bulk of their employees the ones that work in the restaurant on a daily basis, not drivers they have delivering pizzas? Correct, but there were also managers that... How many managers? I mean, isn't most of a restaurant made up of the bulk, our employees, and the managers are few? Yes, yes. So didn't they kind of show... Well, anyway, there's some certainly evidentiary support for maybe one year, that if you take the least expensive meal, and you know that they provided so many thousands of meals, that they had some evidentiary support for showing that the amount of money it cost them to put out those meals was less than the money they were deducting from the paychecks. Well, let me address one aspect of that. All right, all right. They had 6,700 vouchers, which is the same as a meal, but the assumption is that that voucher represented full consumption of a full meal, rather than, as I said, just an order of fries. If an employee just wanted an order of French fries, they had to fill out a voucher. Sure. So for that year in question, the assumption is that every one of those vouchers is worth $264. Average. And that's not necessarily the case. All right, all right. But the fact of the matter is that those vouchers are really there, so they can demonstrate whether they took an order of fries, or whether they took the most expensive meal available. Yes, and I think that's the rub of this lawsuit, is that... All right, so there may be questions of fact, but there is evidentiary materials that were supported for a one-year period of this entire class action. Yes, and... I think on that year, there's a question of fact of... All right. Okay, fine. That's fair. You say that at least that would go to a jury. Yes. All right, rather than conceding, and I'm not suggesting you concede, but at least you would agree that for that year, there would be certainly something that wouldn't allow you to get judgment as a matter of law. Yes. All right. Yes. Now, let me address an issue that flows from your questioning, and that's the fact that the statute doesn't allow, and no employer is allowed to say, well, in 2012, I paid minimum wage to everybody, and in 2011, I paid minimum wage to everybody, but in 2010, I don't have the records, but trust me, I paid minimum wage that year as well. That's not the way the wage laws work. The employer is obligated to maintain the records to justify that they paid minimum wage for all time. So the fact that after the lawsuit was filed and the defendant maintained these records for this 11 1⁄2 months, the fact that those records are helpful for that time frame, you cannot extrapolate that and say, well, of course, they must have paid full minimum wage in the prior years. No, but if they can come up with further documentation, isn't there a question of fact as to whether or not the year that they have every single meal ticket demonstrative of that they weren't making a profit? Theoretically, it could be, but they did not keep those records. Well, is that something, though, that you can say as a matter of law that they can't subsequently or after come up with records? Yes. Whether they have their individual records or not, they're going to be able to compile records indicating what they paid to those employees. Well, they've made that attempt, and we don't believe they're successful because the minimum wage law, the plain language says the employer gets credit for food actually used. I know what your theory is, and I think I agree with you that you don't have to show what each individual employee ate ever. That's not what the case requires. But you do have to show, I think, I think I agree with your proposition, that you have to show how many of these meals did they actually provide because if you don't do that, how are you really establishing that you did not make a profit or that you made a loss? And the fact is that other than the final year, the final 11 1⁄2 months, they do not have the records to show what was consumed in all of the prior years, going back to 2003. They kept no records of what was actually consumed in terms of the food, and frankly, the trial court just ignored the language that said what you look to is food actually consumed. And the defendant said, we don't... Is it food actually consumed, or is it the meals that they provided? I'm not sure I understand whether there's a... The phrase is meals used. Meals used? Yes, which means... Like meals that they actually ate. Yes, and that's different from the federal regulation, which just says that an employer gets credit for meals furnished. Well, you know that case you cited, the one Illinois case that wasn't a class action where the employer deducted $10? Do you know what I'm talking about? I think it was $6, but... Six. Oh, well, the court gave them a $6 credit after trial. That was reversed. But do you remember what their records were in that case? The record was... Nothing. Completely deficient is what... All right. Yes. So that case doesn't really tell us much, does it? Well, it tells you that you have the employers to keep some type of records. And in 2008, going backwards, they don't have records of what was consumed. They have... What the defendants have done, and what the trial court accepted, is the defendants totaled up the number of shifts involved. And the defendants equated shift equals meal. And there's no evidence of that. There's no evidence, and common sense would say that... I don't care if the employer is supplying lobster, which is your favorite food, it's common sense that the employees are not going to eat it day after day after day after day. But the defendant has taken the position that it was available every shift. They could have consumed it, and that's all we need to do is just show that it was made available. And that may pass muster under the federal regulations in the Fair Labor Standards Act, but that is not permitted under the Illinois Minimum Wage Law, where it uses the phrase actually used. Were they taking out 25 cents from whatever the shift was? Let's say the employee worked... They say in here that there was an average shift of 6 1⁄2 hours. So it's 25 cents per hour. So we're talking about $1.50? Yes. Okay. Do you think that, at least for maybe the year that they have all these records, do you think that you showed by way of any testimony, expert or otherwise, that they were actually making money when they took $1.50 out for a meal and a drink? No. To answer your question, do I think we showed that? No. But you don't think you have to show that? Correct. We don't have to. It's their burden. Okay. But when you're asking for summary judgment as a matter of law, don't you have to show that there was no profit? Absolutely. Did you show that for any year? I think other than the last 11 1⁄2 months, we absolutely did. How? We showed it by... By the absence of anything? Correct. By the absence of their evidence? Yes, because it's the employer that has to prove that they paid minimum wage. What do you have to show as the plaintiff in this lawsuit? We have to allege we were not paid minimum wage and then create the factual question about that and the burden. How did you show that? What evidence did you come up with to show? I know you're saying they have to show that they didn't make a profit and that the cost of the meals was equal to or... I may be flipping this the wrong way. Whatever. They can't make money on the deal, all right? Right. But even though they have this obligation, what does the plaintiff have to show? Yeah, what's your burden? We don't have it. The burden is on the defendant to show that they paid minimum wage. You mean you're contending as a plaintiff that you have no burden to prove anything? Well, we have the... What our burden, and it's not the legal burden, but what we did is attack their proof that they paid minimum wage. Well, you still have some burden, don't you? We have the burden to establish that they cannot demonstrate that they paid minimum wage. But how did you do that? Don't you have to do something? You ask for summary judgment, but you're the one bringing the lawsuit. You're the proponent. You have a burden of proof, but you also have to show something, don't you? What we showed is that they didn't... Keep records? Correct. And that's no different than any other minimum wage case where you say, the employee can say, I was not paid minimum wage. Okay, but is that legally competent evidence? I mean, summary judgment on every case, you have to have some legally competent evidence to show that you weren't paid. Now, for someone just to say they took out $1.50, and so I wasn't paid the minimum wage, that is not competent evidence. That's a conclusion. It's a legal conclusion. It's unsupported by any fact. I'm trying to understand what the plaintiff has to show in order to not only prevail, but at least when you're asking for summary judgment, you've suggested you should at least get liability. But I don't know what... The case was clear that it's the defendant's, and we've cited those, it's the defendant's burden to establish that they've paid minimum wage. Okay. Okay. Yes. That's the allegation we made. All right. That's what the lawsuit was about. And the defendant... The fact that they... You're saying that the fact that they deducted money puts you sort of over the top. Right. We said you're taking out $0.25 every hour, but I'm not eating this food every day. I know my coworkers... But that's not a requirement, is it? It's not a requirement that the employee eats, actually eats the food. Yes, it is. Under the... Your particular employee had to eat the food to take the $0.25, or the fact that he had the opportunity and everybody else ate? The minimum wage law says that it has to be food actually used. For all the employees. Well, you look at it in the aggregate, and this gets into the issue of the class certification. So the fact that every employee is subject to this $0.25 deduction... Well, that's kind of like... I think Justice Taylor's point is well taken. There's no requirement under Illinois law or cases interpreting the federal law that the defendant has to show that an individual employee participated in the program by having a meal every day. It's just that these were regularly provided to the employees and that meals were actually provided. No, with all due respect, if you look at the... Well, then I think the class certification is wrong. If you look at the language of the Illinois minimum wage statute, it talks about either lodging actually used or food actually used. Not just made available. No, but actual in the sense of the statute means that reasonable cost... You kind of left that word out, but reasonable cost means the actual cost to the employer to put out those meals and then to show they didn't make a profit, you do have to show how many meals were provided. Otherwise, you don't show whether they made money or lost money on the deal. But you don't have to show that each individual employee was eating every day. Correct. Not in the individual, but in the aggregate you do because you have to know how many meals the employer is literally providing and are being consumed every day. To take a somewhat absurd example, let's say the employer said, we're going to furnish herring or some liver and onions, and that's the only food item. And the employees say, geez, I know I'm paying 25 cents for this, but I just can't stomach herring. So they don't consume it. And the employer says, hey, I made it available to them. It's not my problem that they didn't consume it. And that's just not right. I know what you're probably talking about. I think I understand your position. But it's not about what an individual employee does or doesn't do on a given day. It's about what all the employees are consuming. It's about how many meals are being produced. It's about how many that are consumed because these are all items that are in their kitchen. Well, okay, when you say consumed, I understand what you mean. That's what I meant originally when I said, they put a meal ticket in, it says what they want, and for purposes of summary judgment, that is a meal that's either consumed, used, or whatever you want. Or delivered. Well, and eaten on premises. I'm saying delivered. Yes. Instead of consumed. Yes. But here's the problem that I have. You're coming before us and you're saying that you really have no burden of proof, that the burden of proof is the defendant to show that they paid the minimum wage. Is that what you're telling me? Yes. It's the defendant's burden to establish that they. I see. So in this type of case, a plaintiff has no burden whatsoever. Is that what you're saying? Or is it your burden to show that they did not pay minimum wage and then it shifts to them to show that they did? Which way is it? It's the defendant's burden to establish that they paid minimum wage. And you have no burden at all? I mean, this would be the only cause of action in all of America where a plaintiff does not have a burden. Well, we have to put into play and we have to provide the evidence that raises that question. Well, not that raises the question. That offers evidence of that question. Minimum evidence to make a prima facie case. You see, a plaintiff always has to make a prima facie case. You can't just say that we don't think they're paying minimum wage and they have to come in and prove that they are. I don't think that that's what the law says. Well, there's no case that holds otherwise that says that it's... Well, I don't know any case in America that doesn't say that a plaintiff has the burden of proof in a civil action by a preponderance of the evidence unless the statute makes the evidence higher. I don't know of any such case in all of America, in any state of the union. But in the end, the defendant... Well, in the end, you see, that's another story because the burden sometimes is transferred. Some people call it shifting. But you still have to make a prima facie case. You have to show some evidence that they're not paying minimum wage and then they have to show that they are. And... Well, here, can I just interject here? Let's take the years where they didn't have records, okay? Okay. I think following up with what Justice Gordon said, you have to show that, like, the year... Let's say the year before 2009, okay? All right. You have to show... You've shown that they've taken out money. That's established. You've shown they've taken out 25 cents for each shift that every single employee was working, okay? And there isn't too much of a question of fact that most people were taking part in this meal program, okay? But the year they don't have any records, okay, your complaint alleges that they took out 25 cents a day for an hour for each shift. And there's further allegations about this meal program, okay? And you allege that with the meal program, they were making a profit because the average cost has to be the actual cost and they can't make a profit on it, okay? So you've basically said they were taking out money, therefore, they made a profit. And because they don't have the records for this year, then we know that they have made... It cost them less to make the food than what they were getting back from the... or taking from the employees. That's what I mean. So you've basically laid out your complaint and then you've said, okay, now we get summary judgment because for these years, you don't have any records. Well, we're relying on the same record that they're relying on. The record before the trial court, in our view, did not substantiate that the employer was paying the minimum wage for the entire period. But the year that they have all these vouchers for, I mean, it seems fairly clear that what they were... what a meal was costing them, they weren't getting a return on this based on the number of these that they provided, even if you throw out a bunch for the drivers and the managers. So all I'm saying is, I don't know how you've shown that there's a prima facie case, like Justice Gordon said. Simply because they took the money out, you're saying they didn't pay the full wage when there's evidence through the record that they were providing meals every day all those years to all the employees. What we're saying is, the fact that they took out 25 cents, we're not saying that's the wage violation. What we're saying is that 25 cents was too great of a deduction, that it was not costing them 25 cents. But how did you even show at summary judgment that it cost them more than 25 cents? Or less than, I'm sorry, less than. How did you show that? Because it's clear that the way that you calculate the cost to the employer is to look at the meals actually used. So you look at the records and you say, okay, we know how much they were deducting. Now let's figure out how much it was costing them. And you answer that question by how much was consumed. And what number did you come up with? We don't... For the 11 and a half months. For the 11 and a half months, that's problematic for the class. Because they have records for that period. I know. What number did you come up with? In terms of? About actually consumed. $17,000. If you look at each voucher and say each voucher is worth $264. No, not $264. What was actually consumed? That was their argument, that the average is $264. You said some of them only took a cup of soup. Right, we didn't go through the... You didn't look at them. We didn't analyze every voucher and specify the value of each voucher. So you accept that they're $264. If the assumption is that... We accepted they're $264 as if a full meal was consumed. But not... Even the vouchers for the 11 and a half months don't reflect... As I said, sometimes it's just an order of French fries. It's something less than a full meal. Would you need some kind of expert to contradict what they presented? We accepted their food costs. Oh, that's what I thought. We're not saying that mozzarella was three cents less than the employer's claim it is, for instance. We accepted their food costs. What about the questionnaire? What years was that good for? The questionnaire was, again, after the lawsuit was filed. What years was it supposed to cover? So the last year. It essentially overlapped when they retained the vouchers. And the questionnaire, as they conveyed it, the question was, they regularly consume. And regularly doesn't mean every day. It just says, I regularly consume. But that doesn't mean five days a week, every shift. So the questionnaire is not worth a whole lot, frankly. Do you want to reserve some time? Yes, Your Honor. All right, thank you. Good. Good morning, Your Honors. May it please the Court. Again, I represent Defendants Maurice Best, Pizza, Inc., and Peter and Athena Scores. Your Honor, if I could address a few issues that the plaintiff brought up, that this Court asked the plaintiff. Plaintiff, at the summary judgment stage, presented no evidence that employees did not consume meals under this program. In fact, their client testified at her deposition that she did eat meals under this program. After she filed the lawsuit, she continued to eat meals, not every day, but did eat meals under this program. On the other hand, they presented no affidavit, no deposition, no testimony. They never subpoenaed any other employees. Your Honor, we did provide evidence that employees did eat every day. The testimony of the manager and the owner explained that employees did eat every day. But don't you have to show, don't you have to somehow show, though, that after you've established that the meal costs $264, the average, don't you still have to show that somehow the amount of meals you were providing was equal to or the same as what it cost you to provide those meals? And if we don't know how many meals were provided, how do you, how are you entitled to summary judgment on the years where you don't have any vouchers? Well, that is, the standard under the Illinois Administrative Code provides that an employer may charge the employee the reasonable cost, and this is the important part, to the employer of furnishing meals. Right, but reasonable cost. Right. Defined by the cases and the statute indicates that reasonable cost can't be more. Right. It cannot be more than the actual cost. Right. And the actual cost can't, you cannot gain a profit from putting out the meals. Right. So, for example, Your Honor, perfect illustration is the case at hand. Number 10 is a turkey sandwich on the Giordano's menu that we provided to employees. At the beginning of each week, our clients had to make a decision. How much, how many tomatoes am I going to buy? How much turkey am I going to buy? How much bread am I going to buy? They not only had to take into consideration. Remember what he said. They're not quarreling now that the average cost of a meal was $264. Exactly. What they're quarreling with is whether or not you put out that many meals so that you weren't making a profit. Because in reality, if you're not putting out, at some point you may make some money. Depending on how many you're providing. But if an employee doesn't need a turkey sandwich. It's not enough just to say it costs $264 for a meal. We still need to know, well, how many meals were you producing? Because otherwise we can't really determine whether you gained a profit or lost a profit. Or lost money. According to the statute, we're only required to prove the reasonable cost of furnishing a meal. So we prove that. We prove the reasonable cost to make a turkey sandwich available to that employee. You're not listening. Well, I shouldn't say that. What I'm saying is, yes, I agree with you. But how are you showing that you didn't make a profit? Just by saying it cost us $2.64 to provide a meal. It's not the end of the equation, I don't believe. Unless you can explain that to me. I believe it is, under Illinois law and the federal law, interpreting the same provision under the FLSA. In the Herman case, Your Honor, the exact same analysis was done by the employer. They substantiated only the cost to them to furnish a meal to their employees. They used food income statements. They used... The trial court said, you did meet your burden of proof. You did not have to provide evidence of a person who ate a turkey... This many people ate turkey sandwiches every day. The federal statute, I would point out, is not the same. The language is not identical. Judge Rochford, who granted the last certification, said she was looking to that solely for the purpose of deciding whether you had to demonstrate that everybody, that each employee, took a meal. Right. And she said... I'm not sure that that holds as far as interpreting reasonable cost equals actual cost under our statute. And there cannot be a profit made. Well, Your Honor, under our statute, the term actually used does not mean that an employee actually consumed a meal. For example, say you handed them a turkey sandwich and they only ate half of the turkey sandwich and threw it out. I don't think that's what counsel is arguing. I don't think he's arguing that. What was the cost of a turkey sandwich in 2003? Could I look at my summary? Sure. It's not in there. It is in the summary judgment motion. Let me ask you this. Would you say that 70% of your meals are pizza? If you don't know, just say it. I don't know. It's only four out of the 14 meal items that are provided. And when you determine a price, do you determine it by the amount of people at a table and the total bill? Or how did you come out to individual meals? I mean, if somebody bought an 18-inch pizza and there were six people who shared it, did you divide that by six or did you call that one meal? I mean, what did you do? We took the price of flour for us to make the dough, how much the sauce costs, how much the mozzarella costs, how much it cost Marie's best to make that 18-inch pizza. It didn't matter how many people were eating it. Okay. So you consider that one meal or five meals if there are five people at the table? Well, that actually was not an item on the employee menu. I understand that. Right. So we only did the items that were on the table. We're trying to see what reasonable basis you had to decide what a meal costs. We produced and used 3,700 food invoices, how much we were charged by our vendors for pasta sauce or mozzarella. All right. So you took your purchases against your receipts to figure that out. Exactly. Okay. And that's all Illinois law requires us to do. Well, here, let me ask you something. Do you have their brief on page 14? They give an example. Okay. And I want you to explain to me why their example is wrong. Okay. Okay? It's on page 14, and it says if 10 employees each work five eight-hour days in a week and they're subject to a meal credit of $0.50 an hour, all right, that means the employer has claimed a credit of $4 per shift or $20 for the work week with respect to each employee. Right. For some 200 in the aggregate. Okay? And then they say assuming the employer provides one meal per day, which costs the employer $4, if all 10 of those employees consume a meal so that there's 10 vouchers being thrown at the kitchen, okay, the meal program is proper because the employer is not profiting. Right. Okay. But if instead of getting 10 vouchers, the kitchen is getting five, the five others aren't taking any meals, okay, the meal program would be improper because you're still collecting. Remember, you've collected $0.25 out of every single employee's check every single week, that the meal program would be improper because the employer is still collecting the 200 where the actual cost of the program is $100. You can make money on a $2.64 meal is what they're arguing, depending on whether you're sending them out of the kitchen or not. First, Your Honor, Judge Rochford determined at the class certification stage, we did not have to do that analysis. We did not have to determine how many meals each employee ate during HP pay period. I'm not talking about individual employees. I'm talking about the meals that are coming out of the kitchen, not who ate them and how much of that meal they ate. That's not what this example is suggesting. It's not that we're looking at whether, you know, Ms. Monson, you know, did this every day or didn't do it every day or how much she ate of her sandwich or whether she had soup. What was being actually provided in terms of meals every day? You're saying it's just enough to say it only costs us $2.64 so we quit. They're saying, you know, if you're not producing the number of meals but you're still taking out the $0.25 out of every single employee, that could add up to the point where you're making a profit. And, you know, the plain language of the Illinois statute says we only have to prove the reasonable cost of furnishing meals. In that hypothetical, Marie's Best still had to incur a sunk cost of those five meals that weren't actually consumed or even prepared by the employees. I don't understand. If the turkey is not eaten, they have to throw it out the next day. Right. But I'm just saying, if you never served it to the employee, you didn't lose a thing. You didn't have to throw out any turkey. I'm not talking about what... But they purchased that turkey for the employee under this meal credit program. Well, now, really, is that really what Mr. Skouris showed or did he just show how much we were paying to bring in all these food products to run our restaurant? And they would have purchased less if they did not have to provide these meals to the employees. They would have had less of a demand. They would have had to not produce meals for 25 employees every day and take that into consideration when they're making their analysis of how much food they do have to purchase. I think there's something missing from the equation about... I don't think it's enough to say we ordered all these materials and we had every intention of putting out so many meals. But if you don't have evidence of how many meals you put out, then you're not really telling whether you're not... There's no showing that you didn't make some money on the deal. Well, Your Honor, the Morgan Services case, which is the only case interpreting this portion of the Illinois minimum wage law, plaintiffs claim that the Morgan case only interprets the FLSA, but actually they are interpreting the Illinois minimum wage law and the FLSA. They discussed how an employer could substantiate the reasonable cost of a meal program. And the court explicitly stated, and I quote, employers do not need to keep itemized records of the cost of furnishing meals to their employees. So they do not have to keep records of, you know, today I produced five. They only have to... So they're good for 2009. Let's say they don't get summary judgment and maybe you don't get summary judgment. Or maybe you do. But what are you doing for all the other years? Why are you entitled to summary judgment? We are substantiating our cost of furnishing the meal program. How did you do that for the years where you didn't have any meals? We documented the cost, our actual cost, of providing a turkey sandwich, providing every single item on the menu, and we substantiated those with itemized food records from our vendors. That's all the Morgan Services case requires us to do. That's all the cases... I don't understand how that shows you didn't make a profit. That shows... In your 2009, you have every single meal voucher, and you can use that. Right. But you don't have that for any of the other years. All we are required to prove under the plain language of the administrative code is that the reasonable cost to furnish meals to... Our reasonable cost of furnishing meals to the employee was deducted from their 25 cents. We just have to make the meals available. That's all, Your Honor. But how do we know how many meals you did make available if you don't have any records at all? We don't have... You're kind of taking half of the equation out. Reasonable cost I grant you equals actual cost to the employer. Right. But you also have to show there was never a profit made. And with your vouchers in 2009, you've demonstrated, at least it could be argued, you've demonstrated you've shown there was no profit made. But you don't have any records like that for any of the other years. And we don't need to have those records, Your Honor. That's under the administrative code interpreting. So you think the record shows there's no question of material fact that the employer never made a profit, even though there's nothing to establish how many meals you were producing. Exactly. And if we did have to prove how many meals we were producing, then this would not be a class... Why did you produce the 2009 records? Because we had them, Your Honor. They sued us. We kept the meal tickets. How come the suit went back for multiple years? Why didn't the court let them add years? They miscalculated the statute of limitations period for their Illinois Wage Payment and Collection Act claim, and we adamantly objected to them amending their complaint this late in the stage in litigation, but the trial court allowed them to. I didn't mean to cut you off before, so if you wanted to expound on that other thing, I apologize. Your Honor, as much as plaintiffs would like this court to believe, there simply is no actual consumption requirement in the portion of the Illinois Administrative Code interpreting how meal credit programs are determined to be valid. And this is for good reason. If defendants gave their employees a turkey sandwich and they only ate half of that sandwich, under the way they're interpreting the law, we would only be able to deduct from their wages half of the turkey sandwich, half of the cost to us of providing that turkey sandwich. There would be no meal credit programs that would be valid under such a situation because it would require the employer to sit and watch how many pickles the employee ate, how many French fries, how much of the sandwich they actually ate. That simply is not a requirement. I don't think they're suggesting that you have to show that they ate pickles. Consumed. Just that you furnished them. Which we do prove we furnished them. How many meals did you furnish in the year 2008? How many meals did you furnish in the year 2005? Every day we furnished 14 meals. 14 different type of meals. How many meals did you provide to the employees? It depended on how many employees were working that day. There were 25 to 30 employees. We furnished them the opportunity to eat a meal every single day. That means you didn't make a profit. We did not make a profit. Actually, Your Honor, we provide proof that people were taking advantage of this meal program. I think the record shows that. I'm trying to get at this thing how you're saying you're entitled to summary judgment for every year because you established that there was no profit made at any time. But it seems like you're saying as long as you furnished meals, and each meal cost $2.64, that therefore there was nothing else you needed to show. Exactly, Your Honor, and that is what the Part B of the Section 210-200 of the Illinois Administrative Code only requires us to do. Your Honor, getting back to if this court were to determine that we have to prove the exact number of meals that we actually provided or the exact number of meals that each individual employee consumed, then this is simply not a class, not appropriate for a class determination. To finish up, what does this one sentence mean in 210 that you just referred to? Okay. The reasonable cost of meals and lodging furnished by the employer and actually used by the employee may be considered as part of the wage paid. Only were customarily furnished. Your Honor, Part A and Part B have to be read together. Part A sets forth requirements for a meal program to be valid. Employees have to actually take advantage of the meal program. It has to be customarily furnished. Right. And then B says you can't have a profit. And then B takes what you are allowed to deduct for a meal. Reasonable cost, which does not include profit. Exactly. Yes. Right. And that's what we've proven. All right. Well, that's why we're here to decide whether you have any evidence for the years that you don't have any tickets. Thank you, Your Honor. I believe I've covered my bases. Thank you. Thank you. Okay, a very brief rebuttal. Yes. Thank you. And actually, unless there are any questions, I only want to make one additional point, and that relates to the Illinois Administrative Code, Section 210.200. And if you look at Subpart A, it says the employee must receive the meals and lodging for which he is charged. You cannot reconcile that sentence with saying they nearly need to be made available to the employees. And that's the difference between the federal regulation and the Illinois regulation. And that's why the vouchers were some type of evidence to identify meals actually consumed during the pay period as necessary. If there are no questions, I don't have anything further to say. All right. Thank you very much. We'll take this case under advisement in the Court of Appeals.